In re Lewis C. **MULLER** and Lynn C. **Muller**, Debtors.

Steven A. **BERKOWITZ**, Plaintiff,

v.

Lewis C. **MULLER**, Defendant.

**Bankruptcy No. 89–90561–LM7.**
**Related Bankruptcy No. 88–06673–LM7.**

United States Bankruptcy Court, S.D. California.

Feb. 27, 1990.

**912**

David L. Buchbinder, Flora L. Calem, David L. Buchbinder & Associates, San Diego, Cal., for plaintiff.

Radmila A. Fulton, Law Offices of Radmila A. Fulton, San Diego, Cal., for defendant.

## AMENDED MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is whether a Chapter 7 trustee of one estate has standing to initiate a complaint under 11 U.S.C. § 523 to determine non-dischargeability of debt against the debtor in another estate.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### FACTS

Steven A. Berkowitz ("Berkowitz"), is the duly appointed Chapter 7 trustee in the estate of Anthony K. Gwynn and Alicia L. Gwynn ("Gwynns"). Anthony K. Gwynn or Tony Gwynn, as he is more commonly known, is a professional baseball player

employed by the San Diego Padres. The Gwynns filed their Chapter 7 petition on May 22, 1987.

On August 26, 1988, Lewis C. Muller ("Muller"), Gwynn's former agent and financial advisor, filed his Chapter 7 bankruptcy petition. The Gwynns were scheduled as disputed creditors in Muller's bankruptcy proceedings.

On November 21, 1989, trustee Berkowitz filed and served his complaint to determine dischargeability of debt against Muller. The trustee's complaint asserts claims for relief under 11 U.S.C. § 523(a)(2), § 523(a)(4), and § 523(a)(6). Also included is a fourth claim for relief under 11 U.S.C. § 542, requesting a turnover by Muller of certain personal property allegedly owned by the Gwynns, and for an accounting.

On December 8, 1989, Muller filed his motion to dismiss the complaint, ostensibly pursuant to Bankruptcy Rule 7012(b), contesting the standing of trustee Berkowitz to seek a determination of dischargeability of debts. Muller also argues that no damage has accrued to the Gwynn estate as a result of any of Muller's activities.

### DISCUSSION

*First Claim for Relief—11 U.S.C. § 523(a)(2).*

The complaint alleges that commencing in approximately 1981, Muller acted as Gwynn's attorney and professional sports agent, and that as Gwynn's agent, he actively managed and controlled all of Gwynn's financial affairs. The first claim for relief further alleges that Muller induced Gwynn to co-sign with him on a $75,000 line of credit at Peoples Bank. The complaint is somewhat ambiguous, but appears to allege that Muller used the line of credit to draw a $75,000 personal loan for himself and another $41,000 personal loan, without disclosing the loans to Gwynn.

Muller allegedly then went to North County Bank and induced Gwynn to sign a continuing guarantee in the amount of $105,000 with that institution and represented to Gwynn that the $105,000 loan

from North County Bank would be used to pay off all prior loans which had been obtained by Muller from Peoples Bank. The complaint then alleges that Muller allegedly misappropriated the loan proceeds from North County Bank and did not use the proceeds to satisfy the Peoples Bank's notes.[1]

The trustee prays for damages of $105,000 pursuant to § 523(a)(2) due to Muller's alleged misrepresentations and fraud committed on Gwynn.

■ This court concurs with Muller's contention that the claim for relief under § 523(a)(2) should be dismissed because the Gwynn estate has not been damaged by any of Muller's activities. Muller did not obtain any property from the Gwynns through his alleged misrepresentations. Further, the Gwynns' collateral liability to Peoples Bank and North County Bank arising from the guarantees has been discharged by the Gwynn personal bankruptcy. An essential element of a claim for fraudulent misrepresentation under § 523(a)(2) is that damage must proximately result from the misrepresentation. *In re Pascucci*, 90 B.R. 438, 444 (Bankr.C.D. Cal.1988). Accordingly, since the Gwynns have sustained no damage, the first claim for relief shall be dismissed.

*Second Claim for Relief—11 U.S.C. § 523(a)(4).*

*Third Claim for Relief—11 U.S.C. § 523(a)(6).*

The trustee's second claim for relief asserts that Muller as Gwynn's agent and attorney, breached his fiduciary duty to Gwynn by failing to provide the Gwynns with regular accountings, failing to use due diligence relative to placing the Gwynns into various investments which had no value, failing to maintain complete books and records, and failing to disclose to the Gwynns the nature and effect of his guarantees with Peoples Bank and North County Bank. The trustee prays for damages of $105,000 and for punitive damages of an unspecified amount according to proof.

The trustee's third claim for relief pursuant to 11 U.S.C. § 523(a)(6) alleges that all of the above mentioned acts on the part of Muller were done "willfully and maliciously" and with intent to defraud the Gwynns and therefore are not dischargeable pursuant to 11 U.S.C. § 523(a)(6). The trustee again asks for general damages in excess of $105,000 and for punitive damages according to proof at trial.

■ Muller contends that trustee Berkowitz lacks standing to pursue all claims for relief in the adversary proceeding. Specifically, Muller argues that Bankruptcy Rule 4007(a) only entitles the debtor or any creditor to file a complaint to obtain a determination of the dischargeability of a debt.[2] In addition, Muller cites the case of *In re Cannon*, 741 F.2d 1139 (8th Cir. 1984); and *Matter of Martin*, 64 B.R. 638 (Bankr.D.Del.1986) in support of his contention that a Chapter 7 trustee has no standing to commence and prosecute a nondischargeability of debt cause of action. This court disagrees.

Section 323(b) of the Bankruptcy Code provides in pertinent part that "[t]he trustee in a case under this title has the capacity to sue and be sued."

Further, under the Code, § 541 defines property of the estate to comprise all legal or equitable interests of the debtor in property. This paragraph covers a very broad scope. It includes all types of property, including causes of action and all other forms of property formerly specified in Section 70A of the Bankruptcy Act. 2 *Collier on Bankruptcy* ¶ 323.02, at 323–5 (15th ed. 1989). In addition, § 704 of the

---

1. The Gwynns' bankruptcy schedules list a disputed claim of Peoples Bank for approximately $100,000 as a result of "Guarantee of Loans to L. Muller of $24,748.27 and approximately $75,000" and a disputed claim of North County Bank of $97,852.54 also as a result of a "Guarantee of Loan of L. Muller".

2. Bankruptcy Rule 4007(a) reads as follows:
   **Rule 4007. Determination of Dischargeability of a Debt.**
   (a) **Persons Entitled To File Complaint.** A debtor or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt.

Code dealing with the duties of the trustee requires the trustee to "(1) collect and reduce to money the property of the estate for which the trustee serves...."

The trustee's second and third claims for relief, alleging damages under § 523(a)(4) and § 523(a)(6), pray for compensatory and punitive damages as a result of Muller's alleged breach of fiduciary duty and willful and malicious acts directed toward the Gwynns. The trustee argues that if he is successful on these claims then the damages will be distributed to the creditors of the Gwynn Chapter 7 estate.

The court concurs in this analysis and further finds that *Martin* and *Cannon, supra,* are distinguishable. In *Martin,* the Chapter 7 trustee of the estate of a divorced woman attempted to bring suit to find joint marital debts non-dischargeable as to the debtor's former spouse under 11 U.S.C. § 523(a)(5). That section treats as non-dischargeable, spousal or child support ordered in connection with a separation agreement or divorce decree. Since spousal support is exempt under 11 U.S.C. § 522(d)(10)(D) and under most state exemption statutes, the trustee would not have standing to prosecute such a suit since any monies recovered would not inure to the benefit of the estate but rather to the debtor claiming the exemption.

Further, Muller's argument that the literal reading of Bankruptcy Rule 4007(a), which refers only to debtors or creditors, excludes the trustee from maintaining a cause of action to determine dischargeability of debt is misplaced. Clearly Berkowitz, as trustee of the Gwynn estate, is a creditor of the Muller estate and if trustee Berkowitz can prove the compensatory and punitive damage he alleges in his pleadings, he may recover those damages for the benefit of the Gwynn estate. Accordingly, Muller's motion to dismiss the second and third claims for relief on the grounds of lack of standing and lack of damages is denied.

*Fourth Claim for Relief—11 U.S.C. § 542.*

The trustee's fourth claim for relief requests Muller to provide a full accounting and turn over of all funds and records belonging to the Gwynns which are in Muller's possession. Muller submitted a late filed declaration on the date of the hearing on the motion to dismiss indicating that he already turned over all assets belonging to the Gwynns, and further that a computer system that he has in his possession was given to him by Tony Enterprises Inc. as additional compensation.

This court also concludes that the trustee has standing to maintain the turnover action under § 542 of the Code. However, the presentation of the evidence contained in the late filed declaration, if unrebutted, would render this claim for relief moot. Since the trustee has not had sufficient time to respond to the late filed Muller declaration, Muller's motion to dismiss is denied without prejudice as to the fourth claim for relief.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the trustee is directed to file with this court an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.